**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREAS PLONKA and CAROLINE PLONKA, | CIVIL ACTION NO. 3:17-CV-00262 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| BOROUGH OF SUSQUEHANNA et al., | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is a second Motion for Leave to Proceed *In Forma Pauperis* (Doc. 5) filed by Plaintiffs Andreas and Caroline Plonka. For the reasons that follow, the Court will grant Plaintiffs' Motion and allow Plaintiffs to proceed *in forma pauperis*. As such, the Court must screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to assess whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should proceed in part at this time.

### **I. Background**

Plaintiffs Andreas and Caroline Plonka, through counsel, filed this lawsuit against the Borough of Susquehanna, Susquehanna Borough Mayor Nancy Hurley, and Susquehanna Borough Police Chief Robert Sweet on February 10, 2017. (Doc. 1.) Plaintiffs bring this action pursuant to, *inter alia*, 42 U.S.C. § 1983, alleging a violation of the Fourth Amendment to the United States Constitution. On February 17, 2017, Plaintiff Andreas Plonka filed the first Motion for Leave to Proceed *In Forma Pauperis*. (Doc. 2.) This Court denied without prejudice Mr. Plonka's first Motion because it failed to include the relevant financial information of his spouse and co-plaintiff, Mrs. Caroline Plonka. (*See* Doc. 4.) On March 7, 2017, Plaintiffs filed the instant Motion along with an amended application for *in forma pauperis* status.

In support of the instant Motion, Plaintiffs executed Form AO 240, in which they attested that they are currently unemployed, receive a collective income of $735.00 per month via supplemental security income, have only $37.00 in combined cash and savings, own a 1999 Lincoln Town Car, have roughly $700.00 in monthly living expenses, and contribute $410.00 a month in support of their twenty-year-old dependent son. Both Plaintiffs signed the form under penalty of perjury.

## II. Legal Standard

Whether to grant or deny a request to proceed *in forma pauperis* lies within the sound discretion of the trial court. *See Jones v. Zimmerman*, 752 F.2d 76, 78 (3d Cir. 1985). "[I]n order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit." *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). However, "[a] person need not be absolutely destitute to proceed *in forma pauperis*." *Hurst v. Shalk*, 659 Fed. Appx. 133, 134 (3d Cir. 2016). The applicant bears the "burden to 'provid[e] the [Court] with the financial information it need[s] to make a determination as to whether he qualifie[s] for *in forma pauperis* status.'" *Freeman v. Edens*, No. 07–1227, 2007 WL 2406789, at *1 (D.N.J. Aug. 17, 2007) (quoting *Thompson v. Pisano*, No. 06-1817, slip op. at 1 (3d Cir. Nov. 15, 2006)). "A supporting affidavit must state the facts of the affiant's poverty with some degree of particularity, definiteness, or certainty." *Shahin v. Del. Transit Corp.*, No. 10-1147, 2011 WL 2847383, at *2 (D. Del. July 14, 2011).

An application to proceed *in forma pauperis* is governed by 28 U.S.C. § 1915. This section provides,[1] in pertinent part:

> (a)(1) Subject to subsection (b), any court of the Untied States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a

---

[1] Although subsection (a)(1) refers to "prisoners," courts examining the statute have concluded that the statute also applies to indigent non-prisoners proceeding *in forma pauperis* in federal court. *See Douris v. Middletown Twp.*, 293 Fed. Appx. 130, 132 n.1 (3d Cir. 2008).

> person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
>
> . . . .
>
> (e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

To effectuate § 1915, the Third Circuit Court of Appeals has established a two-step process for reviewing *in forma pauperis* applications. *See Deutsch v. United States*, 67 F.3d 1080, 1084 n.5 (3d Cir. 1995); *see also Garland v. U.S. Airways, Inc.*, No. 05-140, 2007 WL 895139, at *2 (W.D. Pa. Mar. 21, 2007) (noting that the screening provisions of 28 U.S.C. § 1915(e)(2) "appl[y] to both prisoner and non-prisoner *in forma pauperis* complaints"). First, leave to proceed *in forma pauperis* is based on a showing that the litigant is unable to pay court costs and filing fees. *See Douris v. Middletown Twp.*, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Second, if *in forma pauperis* status is granted, the Court determines whether the Complaint should be dismissed pursuant to § 1915(e)(2)(B). *Id.*; *Garland*, 2007 WL 895139, at *2.

### III. Discussion

**A.**   ***In Forma Pauperis* Status is Appropriate**

The Court finds that Plaintiffs have met their burden of establishing they are unable to pay the requisite court fees. Plaintiffs have sworn that they are currently unemployed and have received only supplemental security income over the past twelve months. Plaintiffs further attested that their modest monthly expenses roughly meet or exceed their monthly income, and that they have essentially no savings. Plaintiffs only significant asset is a 1999 Lincoln Town Car.

The Court therefore finds that payment of the filing fee would present Plaintiffs with an undue hardship or deprive them of life's necessities. *See Adkins v. E.I. DuPont*

*de Nemours & Co.*, 335 U.S. 331, 339 (1948). Accordingly, the Court concludes that Plaintiffs qualify for *in forma pauperis* status.

**B.     The Complaint May Proceed in Part**

As to the second-step of review, the Court concludes that the Complaint may proceed only in part because some of Plaintiffs' claims must be dismissed pursuant to § 1915(e)(2)(B)(ii).[2] The Complaint alleges that Defendant Police Chief Sweet pushed Mr. Plonka into a door in an attempt to force him out of a Borough Council meeting, which resulted in an open wound injury to Mr. Plonka's leg. Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for excessive force in violation of Mr. Plonka's Fourth Amendment rights against all Defendants, claims for assault and battery against Defendant Police Chief Sweet, and a claim for loss of consortium on behalf of Mrs. Plonka.

**1.     Excessive Force Claim**

As to Mr. Plonka's excessive force claim as against Defendant Police Chief Sweet, the Court finds the Complaint states a claim against the Defendant in his individual capacity. To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show (1) that a "seizure" occurred and (2) that the use of force was objectively "unreasonable." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

A Fourth Amendment "seizure" occurs when an officer "restrains the freedom of a

---

[2]     Section 1915(e)(2)(B)(ii) states that the district court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." This language "is substantially similar to that used in Federal Rule of Civil Procedure 12(b)(6)." *Garland v. U.S. Airways, Inc.*, No. 05-140, 2007 WL 895139, at *3 (W.D. Pa. Mar. 21, 2007); *see Baker v. Reitz*, 1:CV-12-1452, 2012 WL 6055591, at *1 (M.D. Pa. Dec. 6, 2012) ("Section 1915(e)(2)(B)(ii) provides this ground for summary dismissal of a complaint (before service)—failure to state a claim under Rule 12(b)(6) principles."). "In deciding whether to dismiss a complaint under Rule 12(b)(6) (and hence under the IFP statute), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in the light most favorable to the plaintiff." *Garland*, 2007 WL 895139, at *3 (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir. 1988)).

person to walk away." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). That is, "[a] seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). "Put another way, when a seizure is effected by even 'the slightest application of physical force,' it is immaterial whether the suspect yields to that force." *Id.* (quoting *Hodari D.*, 499 U.S. at 625-26).

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). In order to assess whether the force at issue was excessive, the "court must determine the objective 'reasonableness' of the challenged conduct, considering 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 396)). Courts also consider "'the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Id.* (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

The Complaint alleges that a discussion between Plaintiffs and the Susquehanna Borough Council during a January 15, 2015 Council meeting became argumentative. In response, councilmembers requested that Chief Sweet escort Plaintiffs out of the Susquehanna Borough Building. Chief Sweet proceeded to grab Mr. Plonka's arm and twist it behind his back while physically pushing Mr. Plonka toward the exit. Upon reaching the door, Chief Sweet pushed Mr. Plonka into the door in an attempt to force him out of the building. As a result of this push, Mr. Plonka suffered an open wound

injury to his leg, which has yet to heal completely and has required treatment from multiple medical providers.

When construed in a light most favorable to Plaintiffs, the Complaint sufficiently alleges that Mr. Plonka was temporarily seized by Chief Sweet when the Defendant placed his hands on Mr. Plonka's person, twisted Mr. Plonka's arm behind his back, and maintained control over Mr. Plonka's movements while pushing him toward the exit, all without Mr. Plonka's consent. *See Salmon v. Blesser*, 802 F.3d 249, 251 (2d Cir. 2015) ("[W]here . . . an official uses physical force to effect the ejection, so that for a time, however brief, he intentionally restrains the person and controls his movements, a plaintiff can plausibly plead a seizure subject to the Fourth Amendment's reasonableness requirement."); *cf. Laverdi v. Jenkins Twp.*, 49 Fed. Appx. 362, 364 (3d Cir. 2002) (noting that the plaintiff likely was not "seized" when an officer escorted him out of a township meeting because the evidence "strongly suggest[ed] that [plaintiff] consented to leave," and because plaintiff's "compliance with the officer's escort was insufficient to establish actual submission" to a show of authority). Additionally, the allegations suggest that any crimes Plaintiffs were committing by disrupting the Council meeting were nonviolent and relatively nonsevere. *Couden*, 446 F.3d at 496. Furthermore, there is no reason to believe Plaintiffs posed an immediate safety threat to Chief Sweet or others. *Id.* at 497. Accordingly, at the pleading stage the Court finds that the Complaint alleges a plausible excessive force claim against Chief Sweet in his individual capacity.

However, the Complaint also states that Chief Sweet is being sued in his official capacity. (Compl. ¶ 8.)[3] An official capacity suit against a municipal officer is simply

---

[3] Resolving all doubts in favor of Plaintiffs, the Court will assume they are also suing Chief Sweet in his individual capacity. Notably, Plaintiffs seek punitive damages from Chief Sweet on the excessive force claim (*See* Compl. Count I), which cannot be recovered from a township defendant in his official capacity. *See Gregory v. Chehi*, 843 F.2d 111, 119–20 (3d Cir. 1988) (finding a similar request for punitive damages to be sufficient in establishing that plaintiff was suing the

another way of pleading the same action against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). That is, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity." *Id.* at 166. Accordingly, Plaintiffs' Fourth Amendment claim against Chief Sweet in his official capacity is a claim against the Borough of Susquehanna. But in order for a municipality to be liable for damages under 42 U.S.C. § 1983, Plaintiffs must sufficiently plead that they were deprived of a federally-protected right pursuant to a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Id.* at 690. A municipal custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).

      Plaintiffs do not plausibly allege that the deprivation of Mr. Plonka's Fourth Amendment right was effectuated pursuant to a municipal policy, custom, or the like. The Complaint's only reference to the existence of a municipal policy or custom is the conclusory assertion that "Defendants were responsible for creating, implementing, and enforcing regulations and policies regarding officers' interaction with citizens and ensuring officers' training and compliance with such policies." (Compl. ¶¶ 7, 23.) This naked assertion fails to satisfy the pleading requirements for a municipal liability claim. *See, e.g.*, *Niblack v. Murray*, No. 12-6910, 2013 WL 4432081, at *8 (D.N.J. Aug. 14, 2013) (dismissing a municipal liability claim because the plaintiff failed to "identify any ordinance, regulation or official decision adopted and promulgated by [the] Borough" and instead only alleged "'a formulaic recitation of the elements of a [municipal liability] claim'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)); *cf. Boyden v. Twp. of*

---

      defendants in their individual capacities).

*Upper Darby*, 5 F. Supp. 3d 731, 743-44 (E.D. Pa. 2014) (declining to dismiss a municipal liability claim when the complaint alleged sufficient facts to support the allegation that the officers acted pursuant to a custom of allowing excessive force). Consequently, there is no plausible claim against the Borough of Susquehanna, and that claim will be dismissed.

### 2.    Failure-to-Train Claim

Plaintiffs also attempt to assert a municipal liability claim against the Borough of Susquehanna for the failure to train. (Compl. ¶ 24.) In order to bring a failure-to-train claim under § 1983, Plaintiffs must "(1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality." *Lapella v. City of Atl. City*, No. 10-2454, 2012 WL 2952411, *6 (D.N.J. July 18, 2012) (citations omitted). Plaintiffs must identify a specific deficiency, rather than general ineffectiveness of training, and there "must be an affirmative link between the alleged inadequacies of the training and the constitutional violation at issue." *Niblack*, 2013 WL 4432081, at *7; *see Shultz v. Carlisle Police Dep't*, 706 F. Supp. 2d 613, 624-25 (M.D. Pa. 2010) ("When plaintiff asserts liability on the basis of a failure to train, '[a] plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations occurred.'" (quoting *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

Plaintiffs have failed to identify any specific deficiency in training that caused the constitutional violation raised in their Complaint. Instead, Plaintiffs merely allege in conclusory fashion that "Defendants failed to train officers on the appropriate and permissible force which may be used against citizens," (Compl. ¶ 24), and periodically invoke the term "deliberate indifference" in their Complaint without alleging any facts that would support such a claim. *See Niblack*, 2013 WL 4432081, at *9. Accordingly,

Plaintiffs' failure-to-train claim under § 1983 against the Borough of Susquehanna will be dismissed.[4]

### 3. Supervisory Liability Claim

To the extent Plaintiffs attempt to bring a supervisory liability claim under § 1983 against Defendant Mayor Hurley, they fail to state a claim. To state a claim of supervisory liability under § 1983, a plaintiff must allege "(1) that the supervisor participated in violating the plaintiff's rights; (2) that he 'directed others to violate her rights' and that his subordinates did in fact violate those rights; or (3) that he 'had knowledge of and acquiesced in his subordinates' violations.'" *Karmo v. Borough of Darby*, No. 14-cv-2797, 2014 WL 4763831, at *8 (E.D. Pa. Sept. 25, 2014) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010)).

Here, the Complaint does not allege that Mr. Plonka's constitutional right was violated due to an order or directive from Mayor Hurley. Additionally, there is no claim that Mayor Hurley participated in the alleged violation of Mr. Plonka's Fourth Amendment right. Moreover, there is no plausible allegation that Mayor Hurley knew of and acquiesced in Chief Sweet's purported violation of Mr. Plonka's constitutional right. *See Niblack*, 2013 WL 4432081, at *10 ("Plaintiff does not allege that the supervisory Defendants were present during the incident, directed the alleged incident, or even knew of the incident at the time. There are simply no allegations of fact that would support a plausible inference that the supervisory Defendants knew of the level of force used against Plaintiff."). Although the Complaint alleges that Mayor Hurley was "put on notice" about Chief Sweet's "misconduct in the past," the two instances of past misconduct

---

[4] To the extent Plaintiffs attempt to allege a failure-to-train claim against Mayor Hurley in her individual capacity, such a claim likewise fails. There is simply no showing that Mayor Hurley was deliberately indifferent toward persons who come into contact with Borough police officers generally, or Police Chief Sweet specifically. *See Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 391 (W.D. Pa. 2011). Furthermore, Plaintiffs fail to "specifically identify what [Mayor Hurley] failed to do." *Hewitt v. Luquis*, No. 12-cv-312, 2012 WL 3704814, at *3 (E.D. Pa. Aug. 28, 2012).

9

raised in the Complaint concern Chief Sweet's alleged failure to document a police report on behalf of Plaintiffs and Chief Sweet's alleged false accusation against Mr. Plonka of harassing his neighbor (Compl. ¶¶ 17-18.) There is no plausible claim that Mayor Hurley had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *Campbell v. Gibb*, No. 10-6584, 2012 WL 603204, at *10 (D.N.J. Feb. 21, 2012) (quoting *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 673 (3d Cir. 1988)). Accordingly, Plaintiffs' supervisory liability claim against Mayor Hurley will be dismissed.

**B.      Assault and Battery Claims Against Police Chief Sweet**

The Complaint also asserts claims for both assault and battery against Chief Sweet. (Compl. Count II.) Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).

Because the Complaint plausibly states a claim for excessive force against Chief Sweet, it likewise states a claim for assault and battery against the Defendant. *See Boyden*, 5 F. Supp. 3d at 744; *Garey v. Borough of Quakertown*, No. 12-799, 2012 WL 3562450, at *5 (E.D. Pa. Aug. 20, 2012). Accordingly, Plaintiffs may proceed on their assault and battery claims against Chief Sweet.

**C.      Loss of Consortium**

The final Count of the Complaint asserts a claim for loss of consortium on behalf of Plaintiff Mrs. Plonka. (Compl. Count III.) Plaintiffs allege that, as a result of the injuries to Mr. Plonka's leg, Mrs. Plonka has suffered a loss of services, and the Plaintiffs' marriage has suffered.

Although a § 1983 claim does not support a derivative loss of consortium claim, *see Yates v. Thiel*, No. 3:15-cv-1505, 2016 WL 2897624, at *5 (M.D. Pa. May 18, 2016), because the Complaint plausibly alleges claims for assault and battery against Chief

Sweet, the Court will not dismiss Mrs. Plonka's loss of consortium claim against this Defendant. *See Williams v. Gilgallon*, 3:13-CV-02945, 2016 WL 2892490, at *20 (M.D. Pa. May 17, 2016). Of course, because Plaintiffs have not stated any claim against the Borough of Susquehanna or Mayor Hurley, there is no loss of consortium claim against either of these Defendants.

### D.   Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Here, because it is not clear whether an amendment would be futile with respect to Plaintiffs' excessive force claim against the Borough of Susquehanna, failure-to-train claim against the Borough of Susquehanna and/or Mayor Hurley, or supervisory liability claim against Mayor Hurley, Plaintiffs will be granted leave to file an amended complaint if they so choose.

## IV. Conclusion

For the above stated reasons, Plaintiffs' Motion to Proceed *In Forma Pauperis* (Doc. 5) will be granted. Pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2)(B), the Court will dismiss without prejudice Plaintiffs' claims against the Borough of Susquehanna and Mayor Hurley. Plaintiffs' claim alleging the use of excessive force in violation of Mr. Plonka's Fourth Amendment rights will be allowed to proceed at this time as against Police Chief Sweet in his individual capacity. Plaintiffs' state-law claims against Chief Sweet also may proceed at this time.

An appropriate order follows.

March 17, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge